# Decisions of the Supreme Court of Missouri,

## ST. LOUIS DISTRICT, SEPTEMBER TERM, 1829.

### STOKES *v.* McALLISTER.

1. Neither the 5th section of the act of 1827, nor the act of the 4th of July, 1825, concerning judgments and executions, repeals the 73d section of the act of January, 1815, giving to widows the right to remain in the mansion house of their husbands, and the plantation thereto belonging, until the assignment of dower.
2. The right of the widow to remain in the mansion house may be assigned.
3. Ejectment is the appropriate remedy to regain possession, should the widow be evicted; the remedy by action for damages given by the 73d section of the before mentioned act being cumulative.

ERROR from the St. Louis Circuit Court.

WASH, J., delivered the opinion of the Court.

The plaintiff in error brought an action of ejectment against the defendant, in the St. Louis Circuit Court. The cause was tried at the March term, 1819, on the issue of not guilty. The facts appear by a case agreed in substance as follows :—William Stokes and the plaintiff intermarried in England, where they lived and cohabited together for some time, and then separated, having executed articles of separation by which he, the said William, stipulated to pay an annuity of £100 yearly, to William Sparrow and another, as trustees for said plaintiff; that said William removed to the State of Missouri, and there lived separate from said plaintiff, until the time of his death, which happened in Sept., 1823, without lawful issue, and leaving the plaintiff his lawful widow. He, said Stokes, having previously made and published his last will and testament, and thereby devised all his estate, real and personal, to John O'Fallon, in trust for his (Stokes') illegitimate daughter, and appointed said O'Fallon (164) his executor, who qualified as such; that said Stokes, at the time of his death,

Stokes *v.* McAllister.

was seized in fee of the premises in the declaration mentioned, the same being the mansion house and plantation in which he resided at the time of his death. That he also died seized of other real estate in Missouri; that immediately after the death of said William, the plaintiff with the assent of said executor, entered upon and took possession of said mansion house and plantation, and leased the same to one Edward Wheeler, who entered upon, occupied and possessed the said mansion house and plantation until he was ousted by the defendant. That the plaintiff soon after the death of her said husband, commenced a suit for the assignment of dower, which at the time this cause was tried was still pending. That said William Stokes not having paid the annuity stipulated for in said articles of separation, suit was brought by Sparrow, the surviving trustee, against O'Fallon as executor, and judgment recovered for $2,462 and five cents, to be levied of the lands and tenements, goods and chattels which were of said Stokes; that one Nathan Davidson also recovered a judgment in the same Court against said executor for $7,370 debt, and $1,216 03 damages, to be levied as above stated. That executions issued in conformity with the judgments, and were levied on the mansion house and plantation aforesaid, and that the same were in due form of law advertised and sold on the 8th of September, 1825; that John O'Fallon became the purchaser and afterwards conveyed the same to the defendant, who on the 12th of February, 1826, entered upon the said premises and ejected said Wheeler therefrom. Upon these facts the Circuit Court gave judgment for the defendant, to reverse which, this writ of error is prosecuted. The only question presented for consideration, is, whether the sale and conveyance aforesaid to O'Fallon, divested the right of the widow to hold, occupy and enjoy in person, or by her tenant, the mansion house and plantation of her deceased husband.

By the 73d section of "An Act directing the probate of wills and the descent of intestate's real estates, and the distribution of their personal estates, and for other purposes therein mentioned," pased Jan. 21st, 1815, it is provided that "every widow after the death of her husband, may tarry in the mansion place of her husband and the plantation thereto belonging, rent free, until dower shall be assigned her." The act supplementary to the above recited act passed Jan. 20th, 1816, sections 8 and 9, authorizes the sale of real estate by the executor or administrator, reserving the widow's right of dower. "An Act supplementary to and in amendment of the fore- (165) going acts," passed January 25, 1817, regulates the widow's dower after all just demands against her husband's estate are paid, and in case of insolvency, provides that she shall not be entitled to any dower in the lands, &c., but shall be entitled to tarry in the mansion house of her deceased husband and the plantation thereto belonging, of which he died seized and possessed, rent free, for the term of two years," &c., sec. 1 and 4. The 5th section provides that lands, &c., may be sold upon judgment and execution, &c., after the expiration of eighteen months, and makes no reservation of the right of dower, or any provision on the subject, and repeals all acts and parts of acts repugnant to it, &c. "An Act to direct descents and distributions," passed Jan. 11th, 1822, "reserves the widow's right of dower," &c. "An Act concerning executors and administrators," passed on the 12th Jan., 1822, authorizes the executor or administrator, where the personal estate is insufficient, to sell upon application to the Circuit Court, lands, &c., without prejudice in any manner to the widow's right of dower." And "An Act supplementary to an act concerning executors and administrators," passed Nov. 28th, 1822, authorizes executors and administrators to sell, &c., reserving the widow's right of dower. By these laws it

Stokes *v.* McAllister.

will be seen that the widow's right of dower is expressly protected as against the acts and rights of the heirs, executors and administrators. But it is contended that the 5th section of the act of 1817, above referred to, is repugnant to the provision in the act of 1815, allowing the widow to tarry in the mansion place, &c., until dower be assigned her. It is certainly not so in its terms, and looking to the spirit of all the laws on the subject, we think they may well stand together.

The widow of an insolvent person is clearly secured in the possession of her deceased husband's mansion, &c., for the term of two years, and a sale under the 5th section of the act of 1817, could not divest her right, and it can hardly be supposed that the Legislature intended to place the widows of solvent persons upon a worse footing than the widows of insolvents, which might be the case, if the position contended for by the defendant's counsel be correct. It seems to us pretty clear that the Legislature intended widows should hold possession for two years or until their dowers should be assigned, (as the case might be that the estate was or was not insolvent,) absolutely and without regard to the rights of creditors during that period, and that sales made in the mean time should pass the title of the property subject to (166) the widow's right of possession. The act regulating executions, passed July 4th, 1825, contains no broader provisions to subject lands to sale under execution, than those contained in the 5th section of the act of 1817, above cited and relied on.

The sale under execution to O'Fallon could not, therefore, divest the widow's right of possession. It has been argued, that the right to tarry, &c., is personal and not assignable, and the widow had no power to let the premises. We think differently. It has been argued, also, that the action of ejectment is not the proper remedy, but a special action for damages under the 73d section of the act of 1815 above referred to: we think the remedy therein provided merely cumulative, and that the action of ejectment is the appropriate one to regain the possession.

The judgment of the Circuit Court is, therefore, reversed, with costs, and the cause remanded for a new trial in conformity with this opinion.


M'GIRK, C. J., dissenting.

My opinion is, that in this case the widow not only has a right to possession till dower assigned, but that she has a right to dower against the purchaser under the execution and until it shall appear that, to pay debts, her dower must be sold, this right continues.