HARRISON, Respondent, vs. TOWN & DIXON, Appellants.

1. Mere inadequacy of consideration, unconnected with any circumstances of unfairness, overreaching or oppression, is no objection to enforcing the specific performance of a contract, when the parties stand upon an equality, with equal means of information, and not in any confidential relation, and when no artifice is practiced.

16—VOL. XVII.

2. The defendants, who are resisting the specific performance of a contract, cannot object to a decree because it gives to the complainant a greater interest in the contract than he is entitled to, as against other parties who are also entitled under the contract.

*Appeal from St. Louis Circuit Court.*

This was a bill, filed by Harrison, October 3, 1846, for the specific performance of the following agreement, dated August 30, 1838, acknowledged March 22, 1839, and filed for record June 13, 1840:

"Agreement between Ephraim Town, of the one part, and John Smith, William Smith, Henry Smith and Dalzell Smith, of the other part. The parties of the second part hold a note given by the party of the first part, dated August 20, 1817, payable thirty-six months after date, to William Smith, agent of the Steam Mill Company, for the sum of three hundred dollars. This note was given in part consideration of lot No. 3, on the plat of the town or addition to St. Louis, laid out by William Smith, Manuel Lisa and Frederick Bates. A suit has been brought in chancery in the St. Louis Circuit Court, by the party of the first part, to obtain a decree for the title to said lot. Now it is agreed between the parties hereto that, if a decree in said suit shall be obtained for the said party of the first part, for the title to the said lot, the parties of the second part shall surrender to the party of the first part the said note, and the party of the first part shall convey to the parties of the second part, the one undivided half of said lot of ground; but if said party of the first part shall fail in said suit, then the costs of the suit shall be borne by the parties of the second part paying one half. The above note, in case of failure of said suit, is to be paid by the party of the first part."

The bill stated that the above agreement was executed during the pendency of a suit in chancery, brought by Town against the heirs of William Smith, Manuel Lisa and Frederick Bates, to enforce the specific performance of a contract dated August 20, 1817, made by said Smith, Bates and Lisa, while they

lived, to convey the said lot upon the payment of three notes for three hundred dollars each, of which the note mentioned in the above agreement was the only one remaining unpaid. The Smiths mentioned in the above agreement were the heirs of William Smith. The complainant claimed to have acquired their interest in the agreement.

Town, in his answer, stated that the agreement was written by William Smith, one of the parties of the second part, and signed by him without reading the same, and that he was not aware, until long after its execution, that it contained a provision by which he was bound to pay off the note even though he might fail in his chancery suit against the heirs of Smith, Bates and Lisa. He claimed that the agreement was without any consideration, and was entirely for the benefit of said Smiths ; that it was inequitable, unconscientious and a hard bargain, and therefore ought not to be decreed to be specifically performed. He also stated that, at the time of the execution of the agreement, the portion of the lot called for in the agreement was worth largely more than the note which was to be given up to him.

The cause was heard on the bill, answers and replications.

On the hearing, the complainant proved himself to be the owner of the interest of John and William Smith in the agreement above set forth, and also in the lot of land therein described. He also proved the death of Henry Smith, which occurred before 1840, and that his heirs at law were the aforesaid John, William and Dalzell Smith. He also gave in evidence a deed of assignment dated the 21st June, 1841, and duly acknowledged and recorded, executed by said Dalzell Smith and wife to Andrew Elliott, for the benefit of Smith's creditors, by which said Smith and wife conveyed, for the purposes set forth in the deed, the following described real estate, to-wit : All their remaining unsold and undivided right, title and interest in and to the real estate of the late William Smith, deceased, of the city of St. Louis, and situate in Smith, Bates and Lisa's Addition to said city, acquired by said Dalzell, as an heir of

said William deceased, and owned by him as tenant in common, together with the other legal representatives of said William, Frederick Bates and Manuel Lisa, all deceased. Also a deed from Andrew Elliott to complainant, dated May 11th, 1846, and duly acknowledged and recorded, purporting to have been executed under and by authority of said deed of assignment, and to convey all the interest of said Dalzell Smith in and to the aforesaid lot, to said respondent.

The defendants gave in evidence a will of said Henry Smith, duly probated August 23, 1845, and dated July 1, 1837, whereby he devised to said Dalzell Smith and his heirs, all the real estate which he owned, whether lands, tenements or hereditaments, or which was coming to him from the estate of his deceased father, William Smith, excepting a lot which he devised to his niece, but which was not the lot in controversy in this suit. And after making other bequests, he devised and bequeathed all the rest, residue and remainder of his estate, real, personal and mixed, unto his aforesaid brother, Dalzell Smith.

It also appeared that, at the time of the trial, the lot in question was worth $100 per foot ; that property in Smith, Bates and Lisa's Addition, which was bought in 1828, for $2,800, was sold in 1833–4, for $6,000, and was worth in 1838, from forty to fifty dollars per foot ; that the value of property there, after that, remained stationary until about the year 1840 ; after that date it rose rapidly in value. The above was testified in regard to property to which the title was good.

It also appeared that the suit brought by Town against the representatives of Smith, Bates and Lisa, to enforce their contract of August 20, 1817, was commenced on the 7th of February, 1836. Also, that on the 28th of March, 1843, Town conveyed all his interest in the lot in question to Mrs. Dixon, his daughter, and wife of D. W. Dixon, both of whom were defendants in the suit. Natural love and affection constituted the consideration for said conveyance.

*T. Polk*, for appellant.  1. Inadequacy of consideration is sufficient to prevent the specific performance of a contract, although it might not be great enough to set it aside.  *Seymour v. Delancey*, 6 Johns. Ch. R. 224.  *St. John v. Benedict*, ib. 117.  1 Story's Eq. §161.  2 ib. §769, 770.  *Buxton v. Lister*, 3 Ark. 385.  *Osgood v. Franklin*, 2 J. C. R. 23.  *Mortlock v. Buller*, 10 Vesey, 292.  *Day v. Newman*, 2 Cox, 77.  A change in the value of the land ought to have great weight with a court in the matter of decreeing specific execution.  *Brashier v. Gratz*, 6 Wheat. Rep. 539.  2. The court below treated the contract as realty, not affected by the will of Henry Smith, which only operated on such real estate as he owned at the date of its execution.  By this construction, too small an interest was recognized in the minor heirs of Dalzell Smith.  If the contract was a chose in action, then Henry Smith's portion passed by his will to his legatee, Dalzell Smith, and the minor heirs of the latter are entitled to one half of the contract.

*Geyer & Dayton*, for respondent.  The alleged inadequacy of consideration is the only part of the defence upon which there is any evidence; but inadequacy of consideration alone would not defeat the contract, except where it is so gross as to amount in itself to conclusive and decisive evidence of fraud.  1 Story's Eq. §245 to §249.  2 ib. §751, §783.  *White v. Thompson*, Dev. & Batt. Eq. Rep. 493.  *Fupp v. Fupp*, Rice's Eq. Rep. 84.  *Western v. Russell*, 3 Vesey & Beames, 187.  *White v. Damon*, 7 Vesey, 30.  *Bean v. Vallé*, 2 Mo. Rep. 126.  Whether a court of chancery shall decree the specific performance of an agreement or not, is a matter resting in its discretion, but this is a sound legal discretion.  *Seymour v. Delancey*, 3 Cowen, 445.  This decision reverses that made in the same case, as reported in 6 J. Ch. R. 224.

GAMBLE, Judge, delivered the opinion of the court.

The decree rendered by the Circuit Court is objected to upon two grounds:

1. That the consideration which Town was to receive under his contract with John, William, Henry and Dalzell Smith, for one half of the lot then claimed by Town, was so inadequate that a court of equity ought not to execute the contract.

2. That the decree which was rendered, recognized Harrison as entitled to a larger interest, under the contract, than was really his, and that the other parties in whose favor the decree was given, should have had a larger and he a smaller interest, although, if the contract is fully executed, as is directed by the decree, the defendants who resist its execution, and who are appellants, have no interest in the question whether Harrison has too large or too small an interest in the lot.

1. Upon the question whether inadequacy of consideration is an objection to the specific execution of a contract, when standing by itself, unaccompanied by any other evidence of fraud or imposition, and when not so gross as to be of itself what some courts call conclusive evidence of fraud, the courts in England, as well as those in the United States, have entertained very different opinions. All courts agree that the specific execution of contracts by the power of a court of chancery, stands upon the discretion of the chancellor; but that discretion is not an arbitrary discretion, to be exercised without rule, and according to the caprice of the chancellor. It is a sound legal discretion, to be exercised according to the known principles of equity jurisprudence.

Again, it is agreed on all hands, that the circumstances under which a court of equity will refuse its aid in the execution of a contract, are different from those which would authorize the court to set aside the contract. The court will not carry into execution, by its decree, a contract which appears to have been obtained, although not by fraud, yet by any advantage of one party over the other, where the contract is inequitable and unjust, when the court would not, under the same circumstances, set the contract aside.

When these principles are stated, the question is presented in this case, whether the circumstances attending this contract

are such, as to require that a court of equity should refuse to execute it. There is nothing stated in the evidence, of the relations of the parties, or their relative capacity, or of any circumstances attending its execution. The whole objection stands upon the inadequacy of the consideration.

In the case of *Seymour* v. *Delancey*, 3 Cowen, 445, Chief Justice Savage, in giving his opinion in the court of errors, examines the cases in the English court of chancery for specific performance, in which the objection of inadequacy of consideration was made.

The case came to the court of errors by appeal from the decree rendered by chancellor Kent, whose opinion will be found in 6 John. Ch. R. 223. The chief justice went as far back in the citation and review of cases, as that of the *City of London* v. *Richmond*, 2 Vern. 423, and came down to *Western* v. *Russell*, 3 Ves. & Beames, 193, embracing most of the cases cited in the opinion of the chancellor, and he arrives at the conclusion that the chancellor was correct in the doctrine, that inadequacy of consideration was, in itself, a sufficient ground to resist the specific execution of a contract, when the inadequacy was so great as to render the bargain hard or unconscionable. Nine senators concurred with the chief justice, and voted for an affirmance of the chancellor's decree. Senator Sudam delivered an opinion in favor of reversing the decree, expressing his dissent from the doctrine "that inadequacy of price may, of itself, and without fraud or other ingredient, be sufficient to stay the application of the power of a court of chancery to enforce a specific performance of a private contract to sell land. Thirteen senators concurred in the opinion delivered by senator Sudam, and so the decree of the chancellor was reversed.

In this state, it was held, as far back as 1829, in *Bean and others* v. *Vallé*, 2 Mo. Rep. 132, that mere inadequacy of price was not an objection to a court of equity enforcing the specific execution of a contract. This doctrine is supported by high authority both in England and America, as well

as its opposite, and we think it has the support of the better reason.

Inadequacy of price, when connected with circumstances of unfairness, overreaching or oppression, may and ought to be an objection to executing the contract; but when the parties stand upon equal grounds, with equal means of information, and not in any confidential relation, and without any artifice practiced, it is difficult to discover any good reason for refusing the execution of a contract, because the consideration is inadequate. The language is often employed by judges, that the inadequacy of consideration may be so great as to be *conclusive evidence of fraud,* but it is difficult to make the application of such a rule in any given case, for, in almost every case, the fact that the consideration is inadequate, stands connected with some weakness of the party against whom the contract is to be enforced, or some relation of confidence, or some overreaching, or some surprise, or some other circumstance that gives a fraudulent color to the transaction. The only way to test the correctness of the rule, is to attempt its application in a case where the parties are confessedly equal in their capacity, means of information, and in all other circumstances, and where no relation of confidence existed. In such case, gross inadequacy of consideration would as well prove the motive of the party who was to make the conveyance, to be some feeling of generosity to the other party, as it would prove fraud in the party who was to receive the conveyance. Courts of equity will not ordinarily lend their aid to carry into effect contracts which are purely voluntary, but even in such cases, the objection does not rest upon the ground of fraud.

In the present case, the inadequacy in the consideration is supposed to be, at the time the contract was made, the difference between one half of the lot and one-third of the value of the whole lot, or, that the consideration is less, by one-third, than the value of the premises to be conveyed. When it is considered that property in the city of St. Louis, is constantly and rapidly appreciating, the testimony of witnesses who

speak of the value of a lot several years back, is to be received with caution, unless reference can be made to actual sales of property in the same vicinity. No such sales are in this case referred to. But if the evidence should receive the fullest credit, and have all the weight that can be asked for it, it will not show a greater disparity between the price and the value of the half of the lot, than one-third of that value, and this, too, in a bargain which was not to be carried into effect until the termination of a suit in chancery.

When this is the full amount of the alleged inadequacy of consideration, and when Town not only appears to have acted with his eyes open, and with entire deliberation, acknowledging the contract before a justice of the peace, more than six months after its execution, there appears to be no sufficient ground for refusing a specific execution of this agreement.

But a farther objection is made to the execution of this contract, because of its hard, unreasonable and oppressive character, in requiring Town to pay the note held by the Smiths; if his suit for a specific execution of the covenant of Smith, Lisa and Bates, for the conveyance of the lot, should fail.

It is to be observed that the covenant by Smith, Lisa and Bates was to convey the lot to Town, upon the payment of the notes he had given for the consideration, and it appears that he had filed his bill to have this contract executed, when one of these notes was outstanding and unpaid in the hands of the heirs of Smith. Now he might well feel that he would be embarrassed in obtaining a decree for the title, if the heirs of Smith should oppose it on the ground that he had not paid or offered to pay the note for a part of the consideration money which they held. If he could prevent that opposition by interesting the Smiths in his obtaining the decree, he would be relieved from the necessity of advancing the money, and would have their aid instead of their opposition in obtaining the decree.

This was probably the object in entering into the contract for a portion of the lot. The stipulation that he would pay the

note, even if he failed in obtaining the title, did not, in fact, change his obligation, if we throw out of consideration the lapse of time. He was already bound for its payment. But in respect to the obligation of the note, or of this stipulation in the agreement, it is to be borne in mind, that if there was really in law any obstacle that would prevent his obtaining the title to the lot, he would not only be entitled to be discharged from the payment of this note, however solemnly it might have been promised, but he would have been entitled to reclaim what he had already paid, either from the covenantors, if alive, or their representatives after their death.

Again, the very persons with whom this contract was made were, themselves, the owners, by descent from their father, of a portion of the legal title to this lot, according to the recitals in the contract itself; and it was impossible, without an abandonment of the suit, that it should altogether fail, when the parties, defendants to that suit, acknowledged the contract for the conveyance of the lot and its present obligation.

2. There appears to be no solid objection to the execution of this contract, because of this stipulation; nor is there any thing available in the position that Harrison has, by the decree, been found entitled to a larger portion of the property than should have been decreed to him. Whether the interests of the different parties, who are entitled under the contract, are correctly adjudged by the Circuit Court, cannot affect the appellants, who are resisting the execution of the contract to any extent, or in favor of any party. The parties whose interests are said to be diminished by the decree do not complain of it.

The decree of the Circuit Court is, with the concurrence of the other Judges, affirmed.